IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAPITOL PRESORT SERVICES, LLC,** | : | CIVIL ACTION NO. 1:13-CV-2287 |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| v. | : | |
| **XL HEALTH CORPORATION,** | : | |
| **Defendant** | : | |

# MEMORANDUM

Presently before the court in the above-captioned matter is the motion (Doc. 8) to dismiss filed by defendant XL Health Corporation ("XL Health"). XL Health argues that plaintiff Capitol Presort Services, LLC's ("CPS") complaint (Doc. 1) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons that follow, the court will deny XL Health's motion to dismiss.

I.     **Factual Background & Procedural History**[1]

In October of 2011, CPS entered into a service agreement ("the Agreement") with XL Health. (Doc. 1 ¶ 7). According to the terms of the Agreement, CPS agreed to provide a variety of mail services to XL Health, including transporting, presorting, barcoding, commingling, and delivering XL Health's mail to the United States Postal Service. (Id.) In return, XL Health agreed to purchase these services from CPS for an initial term of three years, commencing October 31, 2011, and to timely remit payment for all services rendered. (Id. ¶ 8, Ex. A at 1). Both parties performed their obligations under the Agreement for eighteen months. (Doc. 1 ¶¶ 9-10). CPS provided mail services to XL Health, and, in return, XL Health paid all invoices on a timely basis. (Id.)

On April 25, 2013, XL Health's representative, William "Bill" Snook, sent an email to CPS terminating the Agreement, indicating that XL Health would no longer use CPS's mail services, effective April 29, 2013. (Id. ¶ 11). Following its unilateral termination of the Agreement, XL Health secured mail services from another vendor. (Id. ¶ 13).

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See *infra* Part II. The court has disregarded those portions of the complaint which are merely legal conclusions or a formulaic recitation of the elements of a cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).

On August 30, 2013, CPS filed its complaint (Doc. 1). XL Health filed the instant motion (Doc. 8) to dismiss for failure to state a claim on November 22, 2013. The motion is fully briefed and ripe for disposition.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago, 629 F.3d at 130-31.  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' "  Id. at 130 (quoting Iqbal, 556 U.S. at 675).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## III.  Discussion

The above-captioned matter arises under the court's diversity jurisdiction.  A federal court sitting in diversity is obliged to apply the substantive law of the forum state, which in this case is Pennsylvania.  Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).  To establish a valid breach of contract claim under Pennsylvania law, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  Ware v. Rodale Press, Inc., 322 F.3d

218, 225 (3d Cir. 2003); J.F. Walker Co. v. Excaliber Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002).

In the matter *sub judice*, the parties dispute whether XL Health breached the Agreement by unilaterally terminating the Agreement prior to the expiration of its initial three-year term. (Doc. 1 ¶ 16). In its motion to dismiss, XL Health asserts that (1) the Agreement by its terms was terminable at will; (2) XL Health was not obligated under the terms of the Agreement to purchase mail services exclusively from CPS; and (3) XL Health was not required under the terms of the Agreement to purchase any minimum volume of mail services from CPS. (Doc. 8 ¶¶ 7-9). CPS counters that the Agreement is latently ambiguous because it fails to identify consideration promised by XL Health in exchange for CPS's promises to provide mail services at a set price. (Doc. 12 at 10, 13-14). CPS subsequently argues that it should be permitted to introduce extrinsic evidence to demonstrate that the Agreement was supported by consideration when entered: specifically, that XL Health made an oral promise to provide a portion of its business to CPS for the duration of the Agreement and that this promise was inadvertently omitted from the Agreement. (Id. at 15-16).

The court will address these issues in two phases. First, the court will assess the validity of the Agreement pursuant to the Pennsylvania Uniform Written Obligations Act ("UWOA"), 33 PA. CONST. STAT. § 6. Second, the court will evaluate the termination rights of the parties under the duration provision of the Agreement.

**A.     Validity Under the UWOA**

It is well-established that a promise unsupported by consideration is mere *nudum pactum*, and, absent any recognized exceptions, is generally unenforceable. Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002) (applying Pennsylvania law); Thatcher's Drug Store of W. Goshen v. Consol. Supermarkets, Inc., 636 A.2d 156, 160 (Pa. 1996).  "Consideration 'confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forebearance or return promise bargained for and given in exchange for the original promise.' " Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986) (quoting Curry v. Estate of Thompson, 481 A.2d 658, 661 (Pa. Super. Ct. 1984)).  Pennsylvania law, however, recognizes "written instruments without consideration [as] valid" under certain circumstances.  33 PA. CONST. STAT. § 6. Under the UWOA, "[a] written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." Id.; see also McGuire v. Schneider, Inc., 534 A.2d 115, 118 (Pa. Super. Ct. 1987), aff'd per curiam, 548 A.2d 1223 (Pa. 1988) ("[The] statement of intent [to be legally bound] removes lack of consideration as a ground for avoiding the contract.").

Courts applying the UWOA have concluded that any additional express statement indicating the signer's intent to be legally bound satisfies the requirements of the statute, even when the word "legally" is not included in the

statement. See, e.g., Harrisburg Auth. v. CIT Capital USA, Inc., 869 F. Supp. 2d 578, 598 (M.D. Pa. 2012) (finding that the statement "for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree" met the requirements of the UWOA), appeal dismissed, No. 12-3007 (3d Cir. Dec. 20, 2013); Kay v. Kay, 334 A.2d 585, 587 (Pa. 1974) (finding the UWOA satisfied in a divorce agreement in which a husband who received no return consideration "agree[d] to be legally bound" by its terms). In Kia v. Imaging Sciences Int'l Inc., 735 F. Supp. 2d 256 (E.D. Pa. 2010), the district court for the Eastern District of Pennsylvania, applying Pennsylvania law, upheld the validity of an employee confidentiality agreement under the UWOA, despite a lack of consideration flowing from the employer to the employee; the additional express statement at issue read, "[t]his agreement shall be binding upon me . . . and is for the benefit of the Company and its successors and assigns." Id. at 265. The defendant employee was unable to avoid his obligations under the contract because the language of the agreement, coupled with his signature, satisfied the UWOA. Id. Conversely, written language whereby the signer merely "promises to pay" or "approv[es]" an agreement has been construed to fall outside the bounds of the UWOA. See, e.g., FDIC v. Barness, 484 F. Supp. 1134, 1147-48 (E.D. Pa. 1980) (holding that the statement "the [u]ndersigned . . . promises to pay to the order of [the] [b]ank" was insufficient under the UWOA); Gershman v. Metropolitan Life Ins. Co., 176 A.2d 435, 436 (Pa. 1962) (finding that the phrase "[a]pproved by" followed by the party's signature was inadequate as an additional express statement

7

under the statute); Fedun v. Mike's Café, Inc., 204 A.2d 776, 781 (Pa. Super. Ct. 1964) (holding that a tenant's promise to "release . . . and . . . not hold [the landlord to the lease]" did not satisfy the statute), aff'd per curiam, 213 A.2d 638 (Pa. 1965).

In the instant matter, the parties do not dispute that the terms of the Agreement do not require XL Health to use CPS for any specific amount of XL Health's mail processing. (Doc. 9 at 3; Doc. 12 at 5). XL Health states in support of its motion to dismiss that under the terms of the Agreement, it is obligated only to pay for any mail processing it unilaterally chooses to have CPS perform and to prepare the mail for processing in a specified manner. (Doc. 9 at 2-3). Conversely, CPS must transport, barcode, commingle, and deliver mail; provide invoices in a timely manner; provide an accounting of the mail processed; pick up, process, and sort all mail within one day of receipt; obtain insurance coverage; maintain the confidentiality of XL Health's mail; and hold open the price offered for the aforementioned services for the term of the contract. (Doc. 9 at 2, 8). In its brief, CPS further asserts that the price offered to XL Health was "greatly reduced from its regular pricing structure." (Doc. 12 at 10).

Under Pennsylvania law, a promise that is wholly optional with the promisor is illusory and lacks consideration because the promisor has committed to nothing. Geisinger Clinic v. Di Cuccio, 606 A.2d 509, 512 (Pa. Super. Ct. 1992). Here, XL Health entered into an agreement with CPS for mail processing services while allegedly retaining the unilateral right to decide whether or not to use CPS.

8

Assuming *arguendo* that XL Health provided no consideration in support of CPS's promises, the Agreement is nonetheless valid under the UWOA.

The Agreement between CPS and XL Health includes a "written . . . promise [by CPS] . . . contain[ing] an additional express statement . . . that the signer intends to be legally bound," pursuant to the UWOA. 33 PA. CONST. STAT. § 6. The final page of the Agreement contains the closing statement, "IN WITNESS WHEREOF, the parties hereto have executed this agreement by their duly authorized officers as of the date first set forth," followed by the signature blocks of the parties. (Doc. 1 Ex. A at 3). The Agreement is signed on behalf of XL Health by Kevin Velter, Vice President of Operations and Technology, and on behalf of CPS by Mark Dennin, Vice President. (Id.) Each page includes the following language displayed below the main text: "This agreement is not binding upon Capitol Presort Services LLC until executed by one of its officers." (Id. at 1-3). Although the caption preceding the parties' signature blocks makes no representation as to the legally binding effect of the document, it verifies that Mark Dennin, Vice President of CPS, signed on behalf of CPS as a duly authorized officer. This statement coupled with the recurring footer, which establishes the binding effect of a CPS officer's signature, expresses a clear intent on the part of CPS to be legally bound by the terms of the Agreement, despite the apparent lack of consideration flowing from XL Health to CPS. The use of the word "binding" in this context is sufficient to satisfy the requirements of the UWOA. See Kia, 735 F. Supp. 2d at 265.

Hence, the Agreement is valid and enforceable under Pennsylvania law.[2] The court will next evaluate the termination rights of the parties under the duration provision of the Agreement.

**B.    Duration Provision**

In the instant case, the only provision of the Agreement that relates to its duration reads:

> TERM: The initial term of this agreement shall be for a period of two (3) years[3] beginning October 31, 2011. Thereafter this agreement shall continue from year to year unless written notice of an intention to terminate is given by either party at least thirty (30) days before the initial three-year term or any subsequent one (1) year period.

(Doc. 1 Ex. A at 1). The first sentence specifies the initial duration of the contract: a three-year period during which the parties are obligated to perform under the Agreement. The second sentence outlines the Agreement's automatic renewal and termination procedures.

---

[2] The court declines to address the parties' additional arguments concerning the terms of the Agreement. These contentions are inapposite as a result of the UWOA's applicability to the case at bar and may be raised as appropriate at later stages of litigation.

[3] There is a discrepancy in the first sentence regarding the duration of the initial term. The numeral is "three," while the number that is spelled out is "two." However, in the following sentence, the initial term is reiterated as lasting for three years. Hence, the court will assume that "two" was a typographical error and that the Agreement intended a three-year duration. Even if the Agreement is interpreted to have a two-year duration, XL Health terminated the contract at eighteen months, six months prior to its expiration.

XL Health argues preliminarily that the duration provision only applies to CPS's provision of services at a certain price but not to XL Health's obligations under the Agreement.  (Doc. 9 at 8).  The language and placement of the provision does not suggest such limited applicability.  It is the first term of the Agreement immediately following the contract's statements of scope and purpose.  A court "is not to insert language not placed there by the parties."  Goss v. Timblin, 622 A.2d 347, 350 (Pa. Super. Ct. 1993).  The court interprets the duration and termination provisions to apply to the parties' obligations under the Agreement as a whole.

The second sentence in the Agreement establishes automatic annual renewal and provides instructions on how the parties may terminate the Agreement.  It is ambiguous with respect to when parties must give notice of termination.  The sentence begins with "thereafter," indicating that the thirty-day notice requirement applies only to the one-year renewal periods following the initial term set out in the first sentence of the duration provision.  However, the second sentence indicates that the notice requirement may also apply to the initial three-year period.  Consequently, the provision is open to conflicting interpretations.  Under the first interpretation, a party may cancel *the automatic renewal* either at least thirty days prior to the beginning of the initial three-year term or at least thirty days prior to each one-year term subsequent to the initial term.  Under the second interpretation, a party may cancel *the agreement* either at least thirty days prior to the end of the initial three-year term or at least thirty days prior to the beginning of any subsequent one-year term.  Under either interpretation, the termination

provision would not apply to the initial three-year term laid out in the first sentence, which stands on its own.

XL Health argues that, regardless of whether the duration provision governs its obligations under the Agreement, XL Health did not breach the provision by discontinuing its use of CPS's services because the second sentence of the provision "limits the termination language solely to periods *after* the initial term of the Agreement." (Doc. 15 at 2 (emphasis in original)). XL Health contends that the duration provision "does *not* include direction on how the Parties may terminate the Agreement during that initial period." (Doc. 15 at 3 (emphasis in original)). XL Health therefore assumes that because the provision "does not explicitly prohibit early termination during the initial term of the Agreement," the Agreement is terminable at will during that time. (Doc. 15 at 4).

This argument is unavailing. Pennsylvania case law addressing the termination rights of parties under a service contract with a fixed term is limited. It appears, however, that Pennsylvania courts consider a contract to be terminable at will only when the contract does not specify a fixed term. See Cummings v. Kelling Nut Co., 84 A.2d 323, 325 (Pa. 1951) ("The general rule is that when a contract provides that one party shall render services to another . . . but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will."); see also TMT Sales Co. v. Canadian Shield Spring Water Co., Civ. A. No. 88-8449, 1990 WL 107945, at *4 (E.D. Pa. July 26, 1990) ("If the parties had intended to create . . . a contract

12

terminable at will, there would have been no reason to specify that the initial term of the Agreement would last for three years."). Indeed, even when a contract does not fix a definite term, courts sometimes construe the contract "as providing for a reasonable time or some particular period inferred from the nature and circumstances of the undertaking." Nova Chems., Inc. v. Sekisui Plastics Co., 579 F.3d 319, 326 (3d Cir. 2009) (quoting Price v. Confair, 79 A.2d 224, 226 (Pa. 1951)).

Accordingly, the court finds that when the parties do in fact fix the duration of the contract, the agreement is not terminable at will during that period absent a provision to the contrary. The court concludes that the duration provision applies to both parties' obligations under the Agreement. On the facts as plead, XL Health's early, unilateral termination of the initial three-year term was unsupported by the Agreement's termination language.

## IV. Conclusion

In sum, CPS's complaint adequately pleads (1) the existence of a valid and enforceable contract; (2) breach of that contract's duration provision by XL Health; and (3) subsequent damages. Ware, 322 F.3d at 225 (all three elements of breach of contract cause of action must be present in order to proceed with a claim). For all

of the foregoing reasons, the court will deny XL Health's motion (Doc. 8) to dismiss for failure to state a claim.  An appropriate order will issue.


       /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:     September 9, 2014