IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAPITOL PRESORT SERVICES, LLC,** | : | CIVIL ACTION NO. 1:13-CV-2287 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **XL HEALTH CORPORATION,** | : | |
| Defendant | : | |

# **MEMORANDUM**

Capitol Presort Services, LLC ("Capitol Presort") commenced this breach of contract action against XL Health Corporation ("XL Health") asserting that XL Health unilaterally terminated a service agreement between the parties prior to the expiration of its initial term. Before the court are the parties' respective cross-motions (Docs. 36, 40) for summary judgment pursuant to Federal Rule of Civil Procedure 56. The court will grant XL Health's motion and deny Capitol Presort's motion.

I.  **<u>Factual Background and Procedural History</u>**[1]

Capitol Presort provides mail automation services to government entities and private companies located in Pennsylvania, Maryland, and Virginia. (Doc. 40-1 ¶ 1; Doc. 47 ¶ 1). Specifically, Capitol Presort obtains discounted postage rates for clients by sorting, barcoding, and delivering commingled mail to the United States Postal Service in bulk quantity. (Doc. 38 ¶ 9; Doc. 40-1 ¶ 1; Doc. 47 ¶ 1; Doc. 49 ¶ 9). XL Health employs nurse practitioners who perform in-home patient care. (Doc. 38 ¶ 6; Doc. 49 ¶ 6).

The parties' business relationship commenced in 2009, with Capitol Presort processing XL Health's mail on an as-needed basis. (Doc. 38 ¶ 17; Doc. 40-1 ¶ 3; Doc. 47 ¶ 3; Doc. 49 ¶ 17). The parties did not enter into a written agreement at that time. (Doc. 40-1 ¶ 3; Doc. 47 ¶ 3). The volume of mail tendered by XL Health to Capitol Presort increased between June 2009 and October 2011. (Doc. 38 ¶ 21; Doc. 49 ¶ 21).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. <u>Id.</u> Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (<u>See</u> Docs. 38, 40-1, 47, 49). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

Capitol Presort and XL Health entered into a written service agreement ("the agreement") for automated mail processing on October 7, 2011. (Doc. 40-1 ¶ 6; Doc. 47 ¶ 6). Therein, Capitol Presort agrees to provide mail services to XL Health at fixed rates, including transporting, presorting, barcoding, commingling, and delivering XL Health's mail to the United States Postal Service. (See Doc. 39-3 at 2, 5). In return, XL Health agrees to prepare its mail for processing in a specified manner, to wit: by "affix[ing] the correct postage at the applicable USPS discount rate," dating and sealing envelopes, ensuring the visibility of mailing addresses, and appending presort endorsements to envelopes. (Id. at 2). XL Health further covenants to remit timely payment for all services rendered and to return Capitol Presort's equipment in the event of default. (See id. at 2-3).

The agreement includes a provision which states that its initial term is three years, commencing October 31, 2011, and that thereafter it "shall continue from year to year unless written notice of an intention to terminate is given by either party at least thirty (30) days before the initial term or any subsequent one (1) year period." (Id. at 2). The inceptive three-year term thus extends through October 31, 2014. (See Doc. 38 ¶ 64; Doc. 49 ¶ 64). The agreement additionally contains the following integration clause: "This constitutes the entire agreement and is [sic] understood and agreed that there are no representations, warranties, verbal understandings or agreements of any kind other than specified herein." (Doc. 39-3 at 4). The parties concur that the agreement includes neither a minimum volume provision nor an exclusivity provision. (Doc. 40-1 ¶¶ 12-13; Doc. 47 ¶¶ 12-13).

For approximately eighteen months, Capitol Presort provided mail automation services to XL Health pursuant to the agreement. (Doc. 38 ¶¶ 44-45; Doc. 49 ¶¶ 44-45). On April 25, 2013, William Snook ("Snook"), a representative of XL Health, emailed Mark Dennin ("Dennin"), Vice President of Sales and Customer Service for Capitol Presort; Snook informed Dennin that "beginning Monday April 29 we will no longer be in need of your services." (Doc. 40-10). XL Health proffered its final set of mail to Capitol Presort for processing on April 23, 2013. (Doc. 38 ¶ 61; Doc. 49 ¶ 61).

Capitol Presort initiated the action *sub judice* with the filing of a complaint (Doc. 1) on August 30, 2013. Therein, Capitol Presort asserts a breach of contract claim stemming from XL Health's unilateral termination of the agreement prior to the expiration of its three-year term. (See id.) On September 9, 2014, the court denied (Doc. 16) XL Health's motion to dismiss for failure to state a claim, finding the agreement valid and enforceable under Pennsylvania's Uniform Written Obligations Act, notwithstanding an apparent lack of consideration flowing from XL Health to Capitol Presort. 33 PA. CONS. STAT. § 6. The parties timely filed the instant cross-motions and supporting papers. (Docs. 36-51). The motions are fully briefed and ripe for disposition.

## II.  Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of

4

proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Federal Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2014). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

**III.   Discussion**

Pennsylvania substantive law governs this diversity action. See Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). To prevail on its claim for breach of contract under Pennsylvania law, Capitol Presort must prove: (1) the existence of a contract, including its essential terms; (2) XL Health's breach of a duty imposed by those terms; and (3) actual loss

5

or injury resulting from the breach.  See Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Capitol Presort seeks entry of summary judgment in its favor and requests a bench trial to determine damages.  (See Doc. 36).  The gravamen of Capitol Presort's supplication is that the terms of the agreement, as intended by the parties, obligated XL Health to provide its eligible mail to Capitol Presort *in toto* for a minimum of three years.  (See Doc. 37 at 24).  Capitol Presort endeavors to support its position by pointing the court to various and sundry evidence of record extrinsic to the agreement.  (See id. at 18-25).  Ultimately, Capitol Presort urges the court to hold, as a matter of law, that XL Health's decision to unilaterally terminate the agreement caused Capitol Presort to suffer injury commensurate with "the profits that [it] would have received . . . if all of XL Health's . . . [qualifying mail] was provided to [Capitol Presort] . . . for the last 18 months of the three-year [term]." (Id. at 24-25).

XL Health also moves the court for Rule 56 judgment as to Capitol Presort's breach of contract claim, asserting that Capitol Presort "cannot establish that XL Health breached the [a]greement or that [Capitol Presort] was damaged as a result." (Doc. 41 at 24).  Counterpoising Capitol Presort's *punctum saliens*, XL Health vehemently disavows any obligation to provide Capitol Presort with

6

the totality of its eligible mail during the agreement's initial three-year term.  (See id. at 11-23).  XL Health directs the court to the plain language of the agreement in support of its request for summary disposition.  (See id. at 11-16).

Distilled to their essence, the parties' diametric arguments converge upon a discrete inquiry: whether the agreement contains a latent ambiguity, permitting the introduction of extrinsic evidence.  (Compare Doc. 41 at 11-23; Doc. 48 at 3-22; Doc. 50 at 2-4, 6-10, with Doc. 37 at 6-17; Doc. 46 at 3-14; Doc. 51 at 8-9).  Capitol Presort submits that the agreement's initial three-year term evinces the parties' intent to grant exclusive mail processing rights to Capitol Presort, rendering the agreement latently ambiguous.  (See Doc. 37 at 6-17).  Capitol Presort's attendant postulations are threefold: (1) that a plain reading of the agreement leads to "an absurd and unreasonable outcome," (id. at 9-12); (2) that extrinsic evidence proves the exclusive nature of the agreement, (id. at 12-16); and (3) that a plain reading of the agreement "result[s] in an interpretation that violates XL Health's duty of good faith and fair dealing," (id. at 16-17).  XL Health ripostes that "the [a]greement is clear and unambiguous and . . . an agreement silent as to exclusivity is neither exclusive nor ambiguous as a matter of law."  (Doc. 48 at 4).

The court will first address Capitol Presort's enumerated arguments concerning latent ambiguity, and XL Health's responses thereto, *seriatim*.  The court will then consider the propriety of Rule 56 judgment in either party's favor.

### A.     Latent Ambiguity

#### 1.     *Absurd and Unreasonable Outcome*

Contract interpretation is a question of law, tasking the court to discern the parties' intent through the prism of the written agreement. Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped, 886 A.2d 706, 711 (Pa. Commw. Ct. 2005) (citing Robert F. Felte, Inc. v. White, 302 A.2d 347, 351 (Pa. 1973)). When contract language is ambiguous, or "subject to more than one reasonable interpretation when applied to a particular set of facts," parol evidence may be admitted to determine the intent of the parties. Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 430 (Pa. 2001). Absent ambiguity, the plain language of the agreement as written must be interpreted and enforced by the court. See id. at 429.

To determine whether ambiguity exists, courts consider the language of the contract itself, alternative meanings tendered by the parties, and the nature of any objective evidence offered in support of the proposed constructions. Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 93 (3d Cir. 2001) (quoting Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)). Contractual ambiguity may take one of two forms: patent ambiguity is apparent on the surface of an agreement, whereas latent ambiguity "arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and

unambiguous." Id. In Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit explained that, under Pennsylvania law, a litigant may establish latent ambiguity by either: (1) tendering external evidence that supports a reasonable alternative construction of specific contract language; or (2) demonstrating that a plain reading of the contract's written terms compels an absurd and unreasonable result. See id. at 96.

Capitol Presort first asserts that latent ambiguity in the agreement is facially manifest. (See Doc. 37 at 9-12). Specifically, Capitol Presort posits that the agreement as written engenders an absurd and unreasonable outcome in that "[a] plain reading . . . reveals the absence of any promise by, or obligation upon, XL Health." (Id. at 9). Citing the duration provision of the agreement, Capitol Presort queries: "if XL Health is obligated for the three-year term[,] . . . what exactly are those obligations?" (Id. at 11).

In rejoinder, XL Health insists that its duties under the agreement are manifold. (See Doc. 48 at 13). XL Health observes that the provisions set forth therein obligate XL Health to (1) "take certain steps to prepare the mail for processing"; (2) "return all equipment when required"; and (3) "pay for any services provided . . . within thirty days." (Id. at 13). Further, XL Health ripostes that the agreement is pellucidly reasonable because "no provision . . . allows XL Health to obtain the benefits of the [a]greement without performing its corresponding

9

obligations; XL Health is . . . required to pay for any and all services it requests from [Capitol Presort]." (Doc. 50 at 4).

Capitol Presort's claim occasions the court to revisit the Uniform Written Obligations Act. 33 PA. CONS. STAT. § 6. It is well-established that a promise unsupported by consideration is mere *nudum pactum* and is generally unenforceable absent any recognized exception. See Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002); Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc., 636 A.2d 156, 160 (Pa. 1996). Consideration exists when there is a bargained-for exchange on both sides of an agreement, conferring a benefit upon the promisor or causing a detriment to the promisee. See Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986) (quoting Curry v. Estate of Thompson, 481 A.2d 658, 661 (Pa. Super. Ct. 1984)). Pennsylvania law, however, recognizes "written instruments without consideration [as] valid" under certain circumstances; as stated in the Uniform Written Obligations Act, "[a] written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." 33 PA. CONS. STAT. § 6.

The Supreme Court of Pennsylvania recently elucidated the boundaries of the Uniform Written Obligations Act in Socko v. Mid-Atlantic Systems of CPA, Inc., 126 A.3d 1266 (Pa. 2015). Addressing a non-competition clause in an employment agreement, the Supreme Court of Pennsylvania held that contracts which restrain

trade may be challenged for lack of consideration, regardless of any additional statements expressing an intent to be legally bound. Id. at 1278. The Supreme Court of Pennsylvania recognized restrictive covenants not to compete as unique in the law—subject to heightened judicial scrutiny—in announcing their exemption from the Uniform Written Obligations Act. Id. at 1273-75, 1277-78. Of particular relevance in the matter *sub judice*, the Supreme Court of Pennsylvania clarified that absent such an exception, "any party challenging the validity of a contract containing an express intent to be legally bound will not be entitled to relief from the agreement on the basis that the promises made therein lack consideration." Id. at 1277.

This court applied the Uniform Written Obligations Act in its September 9, 2014 memorandum opinion denying XL Health's motion to dismiss. Capitol Presort Servs., LLC v. XL Health Corp., 2014 WL 4467840, at *3-5. In that opinion, the court found the agreement enforceable notwithstanding an apparent lack of consideration flowing from XL Health to Capitol Presort. Id. at *4-5. The court explained that XL Health's "unilateral right to decide whether or not to use [Capitol Presort]" does not impair the agreement's validity. Id. at *4.

Capitol Presort raises no objections to the court's previous determination that the Uniform Written Obligations Act governs the agreement. (See generally Docs. 37, 46, 51). However, the substance and provenance of Capitol Presort's instant claim of latent ambiguity is that the agreement is unreasonable for lack of

consideration. (See Doc. 37 at 9-12; Doc. 46 at 6-10). The plain language of the agreement, undergirded by the Act, forecloses this ratiocination.

The agreement requires Capitol Presort to provide mail automation services to XL Health at fixed rates for a minimum of three years. (See Doc. 39-3 at 2, 5). Correspondingly, XL Health must take certain steps to prepare designated mail for processing; return Capitol Presort's equipment in the event of default; and remit timely payment for all services. (See id. at 2-3). The express written terms of the agreement are silent as to quantity, frequency, and exclusivity, effectively permitting XL Health not to commission Capitol Presort's services at all. Doc. 40-1 ¶¶ 12-13; Doc. 47 ¶¶ 12-13). Such a result falls far short of absurd and unreasonable. Indeed, it is ratified by the Uniform Written Obligations Act.

As Socko confirms, the Uniform Written Obligations Act preserves the enforceability of an agreement which would otherwise fail for lack of consideration, excepting only *sui generis* contracts subject to heightened scrutiny. See Socko, 126 A.3d at 1277. Capitol Presort's breach of contract claim survived Rule 12 dismissal by virtue of this carefully drawn prescription. See Capitol Presort, 2014 WL 4467840, at *3-5. Capitol Presort now seeks to disavow the very decree which sustains the validity of its contract with XL Health. To find the agreement valid and enforceable in the first instance, but absurd and unreasonable in the second would vitiate the purpose of the Uniform Written Obligations Act and misconstrue the meaning of the agreement's written terms.

In light of the Uniform Written Obligations Act, the agreement's non-exclusivity is rendered neither absurd nor unreasonable by the initial three-year term of the agreement. The court discerns no latent ambiguity arising out of a plain reading of the agreement.

Moreover, the court notes that Capitol Presort's proposed alternate construction—that the parties intended to grant exclusive mail processing rights to Capitol Presort—is without support in the express language of the agreement. See Bohler-Uddeholm, 247 F.3d at 93. Courts applying Pennsylvania law have overwhelmingly held that contracts silent as to exclusivity are unambiguous and non-exclusive as a matter of law. See Assalone v. S-L Distrib. Co., 978 F. Supp. 2d 427, 434 (M.D. Pa. 2013) (Conner, C.J.) (citing Dahath Elec. Co. v. Suburban Elec. Dev. Co., 2 A.2d 765 (Pa. 1938), and collecting cases). Further, the integration clause contained in the agreement suggests that the parties intended to confine their obligations to those expressly stated therein. See Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004). The instant result accords with well-established precepts of contract interpretation.

   2.   *Extrinsic Evidence*

Extrinsic evidence introduced for the purpose of demonstrating latent ambiguity must implicate specific contract language; "it cannot simply show that the parties intended something different that was not incorporated into

13

the contract." Bohler-Uddeholm, 247 F.3d at 93 (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir. 1995)). In Bohler-Uddeholm, the Third Circuit expounded upon this principle:

> [A] claim of latent ambiguity must be based on a "contractual hook" . . . . In other words, the ambiguity inquiry must be about the parties' "linguistic reference" rather than about their expectations. . . .
>
> . . . .
>
> . . . For example, if the evidence showed that the parties normally meant to refer to Canadian dollars when they used the term "dollars," this would be evidence of the right type. Evidence regarding a party's beliefs about the general ramifications of the contract would not be the right type to establish latent ambiguity. Put another way, a party offers the right type of extrinsic evidence for establishing latent ambiguity if the evidence can be used to support "a reasonable alternative semantic reference" for specific terms contained in the contract.

Id. at 94 n.3 & 96 (internal citations omitted) (quoting Mellon Bank, 619 F.2d at 1012 n.13). Hence, a litigant's entreaties as to latent ambiguity must fail if extrinsic evidence does not elucidate the meaning of particular contractual terms. See id. at 93-96; TIG Ins. Co. v. Tyco Int'l Ltd., 919 F. Supp. 2d 439, 464 (M.D. Pa. 2013).

Capitol Presort urges the court that "undisputed extrinsic evidence confirms that the [p]arties[] both understood—at the time they signed the agreement—that [Capitol Presort] was to receive, for the three-year term, all of XL Health's [eligible mail]." (Doc. 37 at 12). Capitol Presort catalogues the evidence it seeks to introduce, concluding that this assemblage "overwhelmingly confirms that a

14

significant term in the [a]greement is missing—*i.e.*, that XL Health was obligated to provide *all* of its [qualifying mail] . . . during the three-year [term]."  (Id. at 16). *Per contra*, XL Health asserts that Capitol Presort "has identified no actual contractual hook."  (Doc. 48 at 8).  XL Health's position is correct.

The court perceives a significant difference between Capitol Presort's supplication and those linguistic controversies which open the door to extrinsic evidence.  Namely, Capitol Presort's argumentation strays into proscribed territory, asserting that it will demonstrate the parties' intent to grant Capitol Presort exclusive rights to process XL Health's mail. (Doc. 37 at 16); see Bohler-Uddeholm, 247 F.3d at 93.  Sabotaging its latent ambiguity narrative, Capitol Presort declares that the evidence it endeavors to introduce concerns a "missing" term, as opposed to a term presently in the agreement. (Doc. 37 at 16).  Moreover, Capitol Presort submits neither evidence nor argument to show that the actual language of the three-year duration provision—its purported "contractual hook"—is susceptible to alternate interpretations.  (See id. at 12-16).  It is apparent that Capitol Presort's tendered evidence implicates the parties' conceptions of their contractual duties, rather than specific language in the agreement.  The court is thus barred from examining extrinsic evidence to determine the intent behind the agreement on these grounds.

### 3.     *Duty of Good Faith and Fair Dealing*

Pennsylvania courts have adopted Section 205 of the Restatement (Second) of Contracts, which provides that every contract imposes a "limited duty" of good faith and fair dealing on each party in performing and enforcing the same. See Baker v. Lafayette Coll., 504 A.2d 247, 254-55 (Pa. Super. Ct. 1985) (citing and adopting RESTATEMENT (SECOND) OF CONTRACTS § 205).  In an action for breach of contract, a good faith and fair dealing claim "must always be grounded in a specific provision of a contract" rather than some abstract or perceived social policy. Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co., 518 F. App'x 58, 62 (3d Cir. 2013) (nonprecedential) (citing Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000)).  Confined to contractual language, the duty of good faith "does not create independent substantive rights." See Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013).

Capitol Presort posits that a plain reading of the agreement "would result in an interpretation that violates XL Health's duty of good faith and fair dealing." (Doc. 37 at 16).  According to Capitol Presort, "a contract that places all of the obligation on one party, with no corresponding obligation on the other, is neither in good faith, nor fair."  (Id.)  Capitol Presort misapprehends the efficacy of its declarations.

Significantly, Capitol Presort cites no authority in support of its contention that XL Health violated its duty of good faith and fair dealing herein.  (See id. at

16

16-17). Capitol Presort also fails to explain how XL Health's purported violation of this duty renders the agreement latently ambiguous. (See id.) Laid bare, its *ipse dixit* asseverations merely restate arguments raised and addressed above. Untethered to any "specific provision of [the] contract," Capitol Presort's disputation misses the mark. See Nationwide, 518 F. App'x at 62.

Capitol Presort's final claim of latent ambiguity suffers the same fate as those rejected *supra*. The court concludes that the agreement is unambiguous as a matter of law.

### B.  Rule 56 Contract Interpretation

Capitol Presort asserts that XL Health committed a breach of contract by unilaterally terminating the agreement prior to the expiration of its initial three-year term. (Doc. 1). The court finds that the agreement contains neither a minimum volume provision nor an exclusivity provision. (See Doc. 39-3). Thus, XL Health was under no duty to use Capitol Presort's services during the initial three-year term set forth therein.

Under this interpretation, Capitol Presort is unable to prove either breach or damages. See Ware, 322 F.3d at 225. Quite simply, Capitol Presort has adduced no evidence tending to show that XL Health violated an enumerated duty under the agreement. Further, in light of the absence of minimum volume and exclusivity provisions from the agreement, Capitol Presort cannot prove damages. Consequently, XL Health is entitled to judgment as a matter of law on Capitol Presort's breach of contract claim.

**IV.    Conclusion**

The court will grant XL Health's motion (Doc. 40) and deny Capitol Presort's motion (Doc. 36) pursuant to Federal Rule of Civil Procedure 56.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      March 30, 2016